### JOHN A. MORRIS v. J. M. HALL ET AL.

#### (February 7, 1880.)

CONTRACT TO LOCATE LAND.— The locator acquires no interest in the land *simply* by having located the certificates and having surveyed it; nor can the custom of the country to give what is called a locative interest in the land to the person who locates it, as compensation for his services, create or furnish the terms of a contract to bind the owner of the certificate.

APPEAL from McLennan county.    Opinion by QUINAN, J.

STATEMENT.— This case is presented to us upon an agreed statement of the facts, and the propositions of law involved. The questions to be determined are, whether the facts agreed authorized the verdict of the jury, and whether the court erred in its charge.    Upon a careful examination of the evidence we are constrained to say that it does not support the verdict of the jury.

The charge of the court (which is not excepted to) presented to them the inquiry "·whether Jennings, as agent for Hall & Parks, or with authority from either of them to locate the certificates, agreed to give James a reasonable compensation in the land; whether he did so, and whether the defendants accepted the work and do not complain of the quality or value of the locations, and directed them, if they so found, to find for the intervenors so much of the land as the proof shows is the usual and customary fee paid at the time for the service."

OPINION.— We do not think there is sufficient proof that Hall & Parks authorized Jennings to make compensation for the location of the land certificates in a part of the land to be located, or that Jennings agreed with James so to do.

In Ross *v.* Mitchell, 28 Tex., 153, Moore, C. J., says: " The only promise which the law implies from the performance of work and labor for another is for the payment in money of the reasonable value of the services rendered. . . . There is no proof in the record that Taylor contracted with any one to give a part of the land for its location. It is true the witness says that Taylor gave him the certificate to locate, and incidentally, in another connection, he says his interest in the certificate was one-third, but nowhere does he say that Taylor contracted to give him an interest in the certificate or the lands located by it. We cannot infer that he was entitled to a third of the land *merely* from the fact that it was placed in his hands by the party entitled to it, and his mere statement that his interest was one-third, without anything to show how, when or from whom he derived his interest. The court cannot, on such slight foundations, build titles of this kind."

So in Sypert *v.* McCowen, 28 Tex., 634, Smith, J., says: " The locator could acquire no interest in the land *simply* by having located the certificate and having it surveyed. The custom of the country to give what is called a locative interest in the land to the person who locates it, as compensation for his services, cannot create or furnish the terms of a contract to bind the owner of the certificate." In this case there was no proof of any custom or contract or claim because of the custom.

The observations of the judge in those cases are directly applicable to the facts agreed in the present case. Hall placed the certificate in Jennings' hands to *have* them located; Jennings employed James to have them located, and James performed his engagement faithfully. The executor of James claims that James had an interest in the lands for their location, and states his belief that the loca-

tive interest was one-half. He says: "This belief I don't state as a fact, and it must only have weight as facts go to sustain it." He then goes on to state upon what circumstances he bases his belief. These are:

1. A memorandum made by his co-executor that James' interest was one-half. 2. That James' books contained no money charge for locating the lands; and if such had been the understanding the charge would have been made. 3. That in James' handwriting (the body of it) is found an order signed by De Cordova, on Parks and Hall and Jennings, to convey to him his (Cordova's) locative interest in the lands, and a transfer from Cordova to James of his locative interest of one-third. 4. That James paid taxes on the lands for many years to a large amount, and finally that Jennings was a man of speculative turn, habitually in need of money.

Beyond this we find nothing in the evidence which would go to prove a specific contract with James for his compensation in land, and that it is obvious that to hold this proof sufficient to sustain the verdict we must ride rough-shod over the decisions we have quoted. Although our conclusion upon this point necessarily disposes of the case and requires its reversal, we think it proper to notice the objection to the charges of the court, and the rejection of Renick's testimony.

The first charge asked by defendant, as asked, might well have been refused. The first portion of the charge had already been given in the judge's general charge, and the concluding portion, "such a contract cannot be inferred," was erroneous. It could only mislead the jury. It conveyed the idea that a contract to locat land certificates for a part of the land must be establish d by proof of the actual making of it, and that they were not at liberty to find the existence of such a contract fi m any circumstances whatever in proof, no matter how irresistible the inference might be.

But the modification of the charge by the judge was

equally objectionable, for it left the jury at liberty to find for James' heirs a compensation in land for his services, whether the agreement for land or not was proven.

We do not consider the second objection to the charge or the second proposition thereon as sound, because it is admitted that Jennings had authority from Hall to act as agent in having the certificates located, and, although Jennings may not have disclosed his agency to James in making the contract, yet, if Hall or the parties claiming with him accepted the benefit of the location by James, knowing James' claim, they would be bound by it. Story on Agency, 253; Neil v. Breckenridge, 26 Tex., 105; Reese v. Medlock, 27 Tex., 124. The objection to the admission of the testimony of Renick was not well taken. It is true that testimony as to what was the usual fee paid in land for the location of land certificates may not be admissible to prove a contract to pay in land, but the objection is not on that ground, but that the intervenor must first be required to prove the contract before proof can be heard of the value of the services rendered under it. This would be to take from the jury altogether the consideration of the question whether there was a contract. The objection might possibly be good if no proof whatever had been offered to establish the contract, but this cannot be said in this case.

It is proper, also, as the case will be remanded for another trial, that we should indicate our views of the law as applicable to the case presented in the pleadings and the statement presented here, and which is involved in the controversy. There seems to be no dispute as to the facts of Hall's employment of Jennings to have the lands located, and that, under authority from Jennings, James did locate the lands faithfully and well. We think that, under his employment, Jennings had full authority to use all the necessary and usual means of executing it with effect, and to employ all the means justified by the usages of the particular trade or business of land-locators in this country; that

his authority need not, necessarily, be proved by an express authorization, but may be proved by the habit and course of that business. Ewell's Evans on Agency, 143, 194.

It is true, as is said in the cases we have cited, an agreement to pay in land for locating it cannot be inferred from the mere fact of its location, nor from the mere statement of the locator that he had an interest in the land; but we do not doubt that if it were shown by competent proof that at the period when these land certificates were located it was the general, usual, common and well-nigh universal custom of the country, and of those engaged in location of lands, to locate them on shares, as it is called, or for a locative interest, that the payment of money as compensation for such services was out of the usual course of dealing, a jury might well infer, taking into consideration the bankruptcy of Hall & Parks, the impecuniosity of Jennings, and the other circumstances attending this transaction as developed in the statement of the facts, that it was not contemplated by the parties that compensation should be made in money, and that there was authority in Jennings to contract with James for compensation in land, and that such a contract was in fact made.

The fact that James had expended his money in the payment of the taxes and the preservation of the property; that he had never been reimbursed for his large outlay; that Hall & Parks had suffered so long a period to elapse after the employment of Jennings to have the lands located, never, in the meantime, making any inquiries about them, or efforts to pay the money for the locating of them, if they did not contemplate payment in land, and finally the manifest inequity, abhorrent to our sense of justice, that they should seek to reap the benefit of James' faithful discharge of his employment and enjoy the fruits of his labor and outlay without compensation and at the expense of his heirs, are proper subjects for the consideration of the jury, and circumstances tending to prove a contract to

compensate in lands, or the acquiescence and virtual ratification of the claim for it. It is not necessary that the contract should be proved with that degree of moral certainty which is technically termed beyond a reasonable doubt. It is sufficient if from all the evidence it can be determined with reasonable certainty. Pomeroy on Spec. Perf., 194. In this case Morris has not perfected an appeal. We decide that the judgment in favor of James' heirs be reversed and the case remanded.